UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| GARY MARKINS,<br>    Petitioner, | Case No. 1:14-cv-463 |
| vs. | Beckwith, J.<br>Wehrman, M.J. |
| WARDEN, WARREN<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND**<br>**RECOMMENDATION** |

Petitioner, an inmate in state custody at the Warren Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition and respondent's return of writ.  (Docs. 1, 11).

I.  **FACTUAL BACKGROUND**

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's conviction and sentence:[1]

> {¶8} Gary Markins, Sr. and Nina Mannering were murdered in his home while Mannering's young daughter was present.  At the time, Gary Markins, Jr. (Markins) was living with his girlfriend, Christina Williams, in her trailer behind his father's home.  Although Williams had previously lived with Markins, Sr. in his house, Mannering and her young daughter had moved in shortly before his death.  Markins was estranged from his father and had not seen him for some time prior to his death.  Markins and Williams were both addicted to drugs and Markins, Sr. would supply Williams with drugs, which she would share with Markins.
>
> {¶9} Markins was indicted on 11 counts relating to the robbery and deaths of Markins, Sr. and Mannering.  At trial the state presented evidence that showed Markins, Williams, Williams' cousin Cecil Conley, and his friend Roy, devised a plan to burglarize and rob Gary Markins, Sr.  The state claimed that Markins provided information about how to gain access to Markins, Sr.'s home, as well as information regarding his safe, firearm, and drugs within the residence.  The state

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

> also claimed that with Markins' aid, Conley entered the home and murdered Gary Markins, Sr. and Nina Mannering. And after the homicides, Conley contacted Williams, and she and Markins helped him flee from the scene.
>
> {¶10} Prior to trial, Markins participated in two interviews with law enforcement in which he gave inconsistent statements and provided different accounts of what happened on the day in question. During its case-in-chief, the state showed video recordings of these interviews to the jury and entered them into evidence. The jury found Markins guilty of all counts and he was sentenced to life imprisonment without the possibility of parole for 70 years.

(Doc. 10, Ex. 12, PageID 152–53).

## II. PROCEDURAL HISTORY

### State Trial Proceedings

On February 26, 2010, the Scioto County, Ohio grand jury returned an eleven-count indictment charging petitioner with four counts of aggravated murder and one count each of aggravated burglary, aggravated robbery, kidnapping, tampering with evidence, theft of motor vehicle, conspiracy to commit burglary, and conspiracy to commit robbery. (Doc. 10, Ex. 1).

On August 9, 2010, following a jury trial, petitioner was found guilty of all charges included in the indictment. (*See* Doc. 10, Ex. 2). Petitioner was sentenced to a total aggregate prison sentence of two consecutive life sentences with parole eligibility after serving seventy years. (*Id.* at PageID 43).

### Direct Appeal

Petitioner, through new counsel, filed a timely notice of appeal to the Ohio Court of Appeals. (Doc. 10, Ex. 3). Petitioner raised the following five assignments of error in his appellate brief:

1. The trial court erred in denying Defendant Appellant's motion to suppress evidence.

2. The trial court erred in the admission of evidence such to require reversal of Defendant's conviction.

3. The evidence presented at trial is insufficient to support Defendant's convictions and the convictions are manifestly against the weight of the evidence such that they must be reversed.

4. The verdict forms on the charges do not support Defendant's convictions.

5. The trial court erred in sentencing the Defendant.

(Doc. 10, Ex. 4). On June 13, 2012, the Ohio Court of Appeals remanded the case to the trial court to make findings of fact based on the evidence presented at the suppression hearing and to enter an appropriate decision on the journal. (Doc. 10, Ex. 10). On July 17, 2012, the trial court issued a findings of fact and conclusions of law denying petitioner's motion to suppress. (Doc. 10, Ex. 11). The case was returned to the Ohio Court of Appeals, which affirmed the judgment of the trial court on February 8, 2013. (Doc. 10, Ex. 12).

## Ohio Supreme Court

Petitioner, through counsel, filed a timely notice of appeal to the Ohio Supreme Court. (Doc. 10, Ex. 13). In his memorandum in support of jurisdiction, petitioner raised the following two propositions of law:

I. When a defendant is neither present nor in the proximity of a homicide, and the defendant does not know that a dangerous weapon will be used by the principal codefendant to commit a predicate felony, a finding that the defendant was complicit in that predicate felony cannot alone establish the defendant's complicity to commit aggravated murder under R.C. 2903.01(B) – there must be additional evidence that the defendant shared the principal codefendant's purpose to kill.

II. When a defendant is convicted of kidnapping, the jury verdict must specify that the defendant is guilty of a first-degree felony offense; otherwise, R.C. 2945.75(A)(2) mandates that the defendant be convicted of a second-degree felony.

(Doc. 10, Ex. 14). On June 19, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Doc. 10, Ex. 16).

## Federal Habeas Corpus

3

Petitioner filed the instant federal habeas corpus action on June 2, 2014. (Doc. 1).

Petitioner raises one ground for relief in the petition:

> **GROUND ONE**: In contravention of the Constitution of the United States, Petitioner was denied a fair trial based upon, *inter alia*, insufficient evidence.
>
> **Supporting Facts**: The entire case is based upon a warrantless search and shoddy police work in which testimony about footprints were based upon an officer's perception opposed to empirical, scientific examination.

(Doc. 1).

Respondent has filed a return of writ in opposition to the petition. (Doc. 11). According to respondent, petitioner's sole ground for relief is without merit.

## III.   THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's

4

adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

5

that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, _ U.S. _, 132 S.Ct. 38, 44–45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. _, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at _, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at _, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in

6

light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

### A. Ground One is without merit.

In Ground One, petitioner contends that his convictions were not supported by sufficient evidence. On direct appeal, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's assignments of error challenging the sufficiency and manifest weight of the evidence. The court rejected both claims, reasoning in pertinent part as follows:

> {¶ 28} "'When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.'" State v. Leslie, 4th Dist. Nos. 10CA17, 10CA18, 2011–Ohio–2727, ¶ 15, quoting State v. Puckett, 191 Ohio App.3d 747, 2010–Ohio–6597, 947 N.E.2d 730, ¶ 34 (4th Dist.). Thus, a conclusion that a conviction is supported by the weight of the evidence will also determine the issue of sufficiency. Leslie at ¶ 15. Accordingly, we address whether Markins' convictions are against the manifest weight of the evidence.
>
> {¶ 29} When considering whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Drummond, 111 Ohio St.3d 14, 2006–Ohio–5084, 854 N.E.2d 1038, ¶ 193
>
> {¶ 30} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See State v. Issa, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001). "'If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence.'" State v. Tyler, 196 Ohio App.3d 443, 2011–Ohio3937, 964 N.E.2d 12, ¶ 43 (4th Dist.), quoting Puckett at ¶ 32. Thus, we will exercise our discretionary power to grant a new trial only in the exceptional case where the evidence weighs heavily against the conviction. Drummond at ¶ 193.

A. Complicity

{¶ 31} Regarding his complicity convictions Markins asserts that there was "no evidence whatsoever" placing him at the crime scene or that he participated or planned to participate in the murders or robbery. Rather, he argues that at best, the evidence supports the conclusion that he failed to discourage Conley and Williams from committing a crime or not reporting what he learned about the crimes after the fact to law enforcement. Therefore, he argues he cannot be convicted of complicity to any crime. However, the record directly contradicts his claim of lack of participation.

{¶ 32} A defendant is complicit in an offense by aiding and abetting if he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. State v. Johnson, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. Such intent may be inferred from the circumstances surrounding the crime. Id.

{¶ 33} "The state may show aiding and abetting through both direct and circumstantial evidence, and a fact finder may infer participation from presence, companionship, and conduct before and after the offense is committed." State v. Buelow, 10th Dist. Nos. 7AP–317, 07AP–318, 2007–Ohio–5929, ¶ 29. See also In re T .K., 109 Ohio St.3d 512, 2006–Ohio–3056, 849 N.E.2d 286, ¶ 13.

{¶ 34} In this case, Markins himself admitted during the January 11, 2010 interview with Detective Blaine that Cecil Conley came to his girlfriend Christina Williams' trailer the night before the murders. He knew that Conley planned to rob Markins, Sr. because he heard him tell Williams that he could sneak in to Markins, Sr.'s home while he was sleeping and take his Ohio State bag which contained drugs. Markins then warned Conley that his father had a gun with him at all times and Conley would get shot if he tried to rob his father. Markins also admitted to Detective Blaine that he knew that Conley planned to rob his father because Conley called Williams while hiding in Markins, Sr.'s garage on the day in question. Conley told Williams that the door was locked and he was going to take the lock apart from the outside. Markins claimed that after he heard this, he told Williams to call Conley back and "call the whole thing off," but she refused. He explained that Conley walked back and forth from Williams' trailer to Markins, Sr.'s garage several times and he estimated that Conley hid in the garage for three to four hours.

{¶ 35} Timothy Boggs testified that he knew both Markins and Williams for several years. He testified that he stopped by Williams' trailer in the early morning hours of the day in question. When he arrived, he saw Conley walking from Markins, Sr.'s residence to the trailer. Conley told him that he had broken into Markins, Sr.'s garage, but could not get into the house; in response, Markins advised Conley that there was a way to enter the house through the attic.

8

{¶ 36} Kyle Cassidy testified that a few days before the murders Markins discussed robbing his father. Specifically, he and Williams planned to steal his father's drugs after he picked them up from the pharmacy.

{¶ 37} Shannon Tomblin testified that she is currently incarcerated and met Williams and Markins while selling them methamphetamine. She explained that she would go to Markins Sr.'s home once or twice a week to either buy or sell drugs. She testified that Markins continuously talked about robbing his father for his drugs. Markins told her that in order to rob his father, one would have to shoot him; otherwise his father would shoot first. She also testified that Markins told her that he knew someone that "could get the job done" because the person had committed murder before and been incarcerated for 20 to 25 years.

{¶ 38} Christopher Lodwick testified that while incarcerated Markins told him that he drove the principal to his father's home to commit a robbery. While he and a female were waiting in the car, he heard a gunshot and knew that his father was dead.

{¶ 39} Considering this testimony, there was ample evidence that indicated Markins, at the very least, participated in planning the robbery of his father, including advising Conley how to enter the home through the attic. Therefore, the state presented evidence that Markins was complicit in the crime by aiding and abetting and his convictions for aggravated murder, aggravated robbery, aggravated burglary, tampering with evidence, theft of a motor vehicle and conspiracy are not against the manifest weight of the evidence.

B. Kidnapping

{¶ 40} The offense of kidnapping is generally a first-degree felony but may be reduced to a second-degree felony if the offender releases the victim in a safe place unharmed. State v. Sanders, 92 Ohio St.3d 245, 265, 750 N.E.2d 90 (2001); R.C. 2905.01(C). However, releasing the victim in a safe place unharmed is not an element of the offense; rather it is an affirmative defense. Sanders at 265. Accordingly, the defendant must prove its existence by a preponderance of the evidence. R.C. 2901.05(A). Markins argues that Conley left Williams' daughter in her bedroom, which had no door, i.e. that she was safe. Therefore, he contends that "the jury was influenced by passion and prejudice in their finding that she was not released in a safe place."

{¶ 41} At trial the victim testified she was eight years old and on the day in question, the offender entered the home and shot her mother and Markins, Sr. He then pushed her into a bedroom and told her not to leave or he would also shoot her. Although the bedroom had no door, the victim testified that she tried to open the window to escape but could not get it open. She also testified that the lock on the front door was too high for her to reach and her grandfather had to kick the door in when he arrived several hours later. Therefore, we cannot say that the jury

9

> clearly lost its way by concluding that the offender left the eight-year-old victim in an unsafe place when he left her in a locked house alone and threatened to shoot her if she tried to leave.
>
> D. Firearm Specification
>
> {¶ 42} Markins claims that possession of a firearm cannot be imputed to him under R.C. 2901.21(D)(1). That statute declares possession to be a voluntary act if the person to whom possession is being imputed was aware of the principal's possession of the item with enough time to have ended the possession. Markins argues the state did not produce any evidence to show that he became aware Conley had a gun and he had sufficient time to have ended Conley's possession. However, during the January 11, 2010 interview Markins told Detective Blaine that Conley planned to rob Markins, Sr. and he knew that Conley had a gun. Markins admitted that the day before the murders, Conley came to Williams' trailer with a "little 25 auto." Markins claimed that the gun would not shoot, so in response, Conley fired the gun down the hallway of the home. Thus, we find this assertion meritless.
>
> {¶ 43} This is not an exceptional case in which the evidence weighs heavily against the convictions; therefore Markins' convictions are not against the manifest weight of the evidence. Because this finding then necessarily includes a finding that his convictions were supported by sufficient evidence, we overrule Markins' third assignment of error.

(Doc. 10, Ex. 12 at PageID 158–163).

After review of the record in this case, the undersigned finds that petitioner is not entitled to habeas relief based upon his sufficiency of evidence claim. The clearly-established standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363–64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969–70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796–97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the

11

*state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*. In his sole ground for relief, petitioner contends that the prosecution's entire case against him was based on a warrantless search[2] and testimony regarding footprints left at the crime scene. During trial, the prosecution attempted to establish that petitioner was at the scene of the crime by comparing footprints found at the scene to petitioner's tennis shoes and boots found in Williams' apartment. (*Id.* at 321–22, 323-24). However, even if the footprint analysis was insufficient to establish that petitioner was at the scene of the crime, as petitioner apparently contends, the prosecution offered sufficient evidence to sustain his

---

[2] To the extent that petitioner claims he is entitled to habeas relief based upon an illegal search, his claim is not cognizable. Under *Stone v. Powell*, 428 U.S. 465 (1976), a federal habeas court is prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone,* 428 U.S. at 494–95. Prior to trial, petitioner filed a motion to suppress evidence, including boots found in Christina Williams' trailer. After a hearing, the motion was denied by the trial court. (*See* Doc. 10, Trans. at PageID 248). Because petitioner had a full and fair opportunity to litigate any Fourth Amendment claim and has not identified any obstacle to his presentation of such claims, his ground for relief is not cognizable to the extent he seeks habeas relief based upon violations of his Fourth Amendment rights.

convictions. As noted above, the prosecution based its case against petitioner on the theory that he aided and abetted Conley in the commission of the principal offenses. (*See id.* at 305–306). Under Ohio law, petitioner could be convicted of a principal offense if he supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime and shares the criminal intent of the principal. *See State v. Johnson*, 754 N.E. 2d 796, 801 (Ohio 2001). *See also* Ohio Rev. Code § 2923.03.

  As reasonably determined by the Ohio Court of Appeals, the prosecution offered sufficient evidence to demonstrate that petitioner aided and abetted Conley in the commission of the charged crimes. The prosecution presented several witnesses who testified that petitioner frequently discussed robbing his father for drugs, that he in fact planned the robbery, and that the robbery would require shooting his father. Kyle Cassidy, for example, testified that he observed petitioner and Christina Williams discussing robbing petitioner's father days prior to the murders. (Doc. 10, Trans. at PageID 949). Shannon Tomblin similarly testified that petitioner continuously talked about robbing his father (*Id.* at 965, 972); that petitioner "mentioned somebody coming in that could get the job done because they—whoever had killed before, he'd kill again and that he's already been in prison for 20 to 25 years" (*Id.* at 979); and that, because his father was alert and always armed, "in order to rob him, you would have to shoot him as soon as you went through the door." (*Id.* at 970–71). James Scott Conley testified that petitioner previously offered him ten-thousand dollars to kill his father. (*Id.* at 1147).

  Christopher Lodwick also testified as to a conversation he had with petitioner in prison. From the context of the conversation, Lodwick testified that petitioner indicated that he planned the robbery. (*Id.* at 1023). Specifically, Lodwick testified that petitioner stated that he did not shoot his father, "but he took the guy there who did" and that petitioner warned that individual

13

that he would need a gun. (*Id.* at 1128, 1131). Lodwick further testified that petitioner suspected his father was dead upon hearing the gunshots. (*Id.* at 1128).

Finally, Timothy Lee Boggs testified that on the night prior to the murders, he witnessed Cecil Conley walking from Markins, Sr.'s home towards the trailer, where petitioner and Williams were. (*Id.* at 1161). Boggs said that in a subsequent conversation, Conley stated that he broke into Markins, Sr.'s garage, but could not get into the house. (*Id.* at 1166). According to Boggs, petitioner informed Conley that there was a way to get into the house through the attic. (*Id.* at 1166-67).

When viewing all of the evidence in the light most favorable to the prosecution, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's convictions. As the Ohio Court of Appeals reasonably determined, the prosecution offered sufficient evidence for a rational trier of fact to find that petitioner aided and abetted Conley in the commission of the charged crimes. The Ohio Court of Appeals' adjudication of petitioner's sufficiency-of-evidence claims involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial. Petitioner is therefore not entitled to habeas relief based upon Ground One of the petition, his sole ground for relief.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief. Having found that Ground One of the petition is without merit the petition should be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 10/9/2015

s/ J. Gregory Wehrman

J. Gregory Wehrman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARY MARKINS,
    Petitioner,

vs.

WARDEN, WARREN
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:14-cv-463

Beckwith, J.
Wehrman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).